**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN SMITH,

                  Plaintiff,

v.

MORGAN STANLEY SMITH BARNEY,
LLC,

                Defendant.

Civil Action: 1:18-cv-12159 (PGG)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**
**AND STAY THE PROCEEDINGS PENDING ARBITRATION**

---

On the Brief:

    Kerrie R. Heslin, Esq.
    Meghan Gorman Cohen, Esq.

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

LEGAL ARGUMENT .................................................................................................. 2

POINT I

PLAINTIFF"S ARGUMENT THAT HE "NEVER SAW" THE ARBITRATION EMAIL IS
IRREVELANT AS A MATTER OF LAW ...................................................................... 4

POINT II

PLAINTIFF'S ARGUMENT THAT THE ARBITRATION AGREEMENT IS
UNENFORCEABLE IS CONTRARY TO NEW YORK LAW ........................................ 8

CONCLUSION ............................................................................................................ 11

i

## TABLE OF AUTHORITIES

<u>**CASES**</u><span style="float:right">**PAGE**</span>

Antollino v. Morgan Stanley & Co. LLC, et al.
Civil Action No. 17-01777 (VLB) (D. Conn. May 11, 2018) ...............................................3, 7, 9

Campbell v. Gen Dynamics Gov't Sys. Corp.
407 F. 3d 546 (1st Cir. 2005)........................................................................................................9

Circuit City Stores, Inc. v. Adams
532 U.S. 105 (2001)....................................................................................................................10

Clearfield v. HCL America, Inc.
2017 WL 2600116 (S.D.N.Y. June 15, 2017) ...............................................................................4

Couch v. AT&T Serv's. Inc.
2014 WL 7424093 (E.D.N.Y. Dec. 31, 2014) .....................................................................4, 5, 10

DuBois v. Macy's East Inc.
338 F. App'x 32 (2d Cir. 2009)......................................................................................................4

Gupta v. Morgan Stanley Smith Barney, LLC
2018 WL 2130434 (N.D. Ill. May 9, 2018)
*affirmed*,
Case No. 18-3584 (7th Cir. Aug. 19, 2019) ..................................................................................3

Lockette v. Morgan Stanley
2018 WL 47782920 (S.D.N.Y. Oct. 3, 2018) ..................................................................... *passim*

Manigault v. Macy's East, LLC
318 F. App'x 6 (2d Cir. 2009) ....................................................................................................4, 5

Meckel v. Cont'l Res. Co.
758 F.2d 811 (2d Cir. 1985)..........................................................................................................5

Nassau Insurance Co. v. Murray
46 N.Y. 2d 828 (1978)...................................................................................................................5

Pelligrino v. Morgan Stanley Smith Barney LLC
2018 WL 2452768 (S.D.N.Y. May 31, 2018) ..................................................................... *passim*

Schmell v. Morgan Stanley & Co., Inc.
Civil Action No. 17-13080 (D. N. J. October 15, 2018) ...............................................................4

Skoglund v. Morgan Stanley & Co., LLC
2018 WL 6332551 (Supreme Court New York Nov. 30, 2018).......................................................3

Weiss v. Macy's Retail Holdings Inc.
265 F. Supp. 3d 358 (S.D.N.Y. 2017)...........................................................................................10

## **OTHER AUTHORITIES**

*Fairer, Faster, Better: An Empirical Assessment of Employment Arbitration*, NDP Analytics,
(May 2019)....................................................................................................................................11

<u>**PRELIMINARY STATEMENT**</u>

Defendant Morgan Stanley Smith Barney, LLC ("Morgan Stanley") respectfully submits this reply memorandum of law in further support of its motion to compel arbitration and stay these proceedings. As established in Morgan Stanley's moving papers, including the sworn Declaration of Jessica Krentzman, Plaintiff is bound by a written Arbitration Agreement that requires him to arbitrate all claims raised in this action. The enforceability of the Arbitration Agreement is buttressed by the following <u>undisputed</u> facts, which are dispositive:

- Plaintiff was required to read and review emails he received in his Morgan Stanley email account from Human Resources.

- Plaintiff received the May 20, 2015 Arbitration Email in his Morgan Stanley email account, which included the Arbitration Agreement, the Opt-Out Form and instructions on opting out by June 19, 2015.

- At all times, Plaintiff was an active Morgan Stanley employee and received his full annual salary of $195,000.

- During the opt-out period, Plaintiff responded to work-related emails.

- During the opt-out period, Plaintiff initiated work-related emails.

- During the opt-out period, Plaintiff completed required online training courses.

- During the opt-out period, Plaintiff participated in at least one work-related conference call.

- The Arbitration Agreement and CARE Guidebook were posted and maintained on Morgan Stanley's intranet, me@MS.

- A reminder notice regarding the expansion of mandatory arbitration under CARE and the June 19, 2015 deadline for opting out was posted and maintained on me@MS during the opt-out period.

- Plaintiff never attempted to opt out of the Arbitration Agreement during the opt-out period or any time after he returned from his "informal leave".

In opposition to this motion, Plaintiff argues that he should not be bound by the Arbitration Agreement because Morgan Stanley cannot prove that he opened or read the May 20, 2015 Arbitration Email. Plaintiff confuses the legal requirements for the enforceability of an arbitration agreement. Under controlling Second Circuit authority, the relevant inquiry is

whether Plaintiff received notice of the Arbitration Agreement. It is undisputed that Plaintiff received notice of the Arbitration Agreement because it is undisputed that the May 20, 2015 Arbitration Email from Human Resources was received by Plaintiff at his work email account. This provided him with notice that he would consent to the Arbitration Agreement if he continued his employment without opting out. Plaintiff thereby assented to the Arbitration Agreement by continuing his employment with Morgan Stanley after his receipt of the Arbitration Agreement and his failure to opt-out.

Plaintiff ignores the plethora of cases from the Second Circuit and this Court that hold that an employee who receives notice of an arbitration agreement may be bound in accordance with its terms whether or not the employee opened or read the notice. Because it is undisputed that Plaintiff received the May 20, 2015 Arbitration Email that included the Arbitration Agreement, the Opt-Out Form and instructions on opting out by June 19, 2015, and because those documents were sufficient notice of the Arbitration Agreement, Plaintiff is bound by the Arbitration Agreement because he continued his employment without opting out.  His claim that he did not see or read the May 20, 2015 Arbitration Email is insufficient to create a genuine dispute concerning any material fact as a matter of law.

Significantly, when Plaintiff disclosed his daughter's illness, Human Resources contacted Plaintiff and advised him of his right to apply for leave under the FMLA. Plaintiff voluntarily chose not to take FMLA leave (which would have been unpaid except to the extent Plaintiff used paid time off), and instead chose to stay actively employed (which meant continuing to receive his full salary and continuing to accrue paid time off). Plaintiff's unilateral decision to ignore emails in his Morgan Stanley email account, including emails from Human Resources that he admits he was required to read, is not sufficient to avoid the enforcement of the Arbitration Agreement. Accordingly, this Court should compel Plaintiff to submit his claims to arbitration, and stay this action pending the outcome of that arbitration.

## LEGAL ARGUMENT

Plaintiff's argument in opposition to Morgan Stanley's Motion to Compel is twofold: 1) even though he received the May 20, 2015 Arbitration Email from Human Resources, and even

though he was required to read emails from Human Resources, he is not bound by its terms because he was on an "informal leave" during the relevant period of time and "never saw" it; and 2) because Plaintiff "never saw" the May 20, 2015 Arbitration Email, he did not receive adequate notice, and therefore his continued employment after June 19, 2015 did not constitute acceptance of the Arbitration Agreement. These arguments are the same arguments that this Court and other courts have rejected. *See* Lockette v. Morgan Stanley, Civil Action No. 18-cv-786 (JGK), 2018 WL 4778920 (S.D.N.Y. Oct. 3, 2018)(enforcing CARE Arbitration Agreement and compelling arbitration, on basis that "New York's email presumption prevails," and plaintiff's mere denial of receipt of same May 20, 2015 Arbitration Email was insufficient to rebut presumption and that the email contained sufficient notice of Morgan Stanley's offer and its terms); Pelligrino v. Morgan Stanley Smith Barney LLC, Civil Action No. 17-cv-7865 (RA), 2018 WL 2452768 (S.D.N.Y. May 31, 2018)(finding plaintiff's statement that he "never viewed or received" the CARE Arbitration Agreement sent to his work email account was insufficient to avoid arbitration); Antollino v. Morgan Stanley & Co. LLC, et al; Civil Action No. 17-01777 (VLB) (D. Conn. May 11, 2018)(granting motion to compel arbitration under the CARE Arbitration Agreement notwithstanding plaintiff's claim that she had "no recollection of ever receiving an email containing the information" about it, and holding "[i]t is an established business practice and expectation for employees both to routinely check email and internal business sites for important updates concerning the business, their employment, or changes in operations or procedures"); Skoglund v. Morgan Stanley & Co., LLC, Index No. 156249/18, 2018 WL 6332551 (Supreme Court New York Nov. 30, 2018) )(compelling arbitration under CARE Arbitration Agreement, finding plaintiff's self-serving statement that he could not "remember receiving" the May 20, 2015 Arbitration Email was unavailing, in light of Morgan Stanley's proof that email was sent to plaintiff and plaintiff did not opt-out); Gupta v. Morgan Stanley Smith Barney, LLC, 2018 WL 2130434 (N.D. Ill. May 9, 2018), *aff'd*, Case No. 18-3584 (7th Cir. Aug. 19, 2019)(finding that plaintiff's receipt of CARE Arbitration Email, combined with his continued employment and failure to opt out, gave rise to agreement to arbitrate despite plaintiff's contention that although he had received the email he had not read or opened the

3

email); <u>Schmell v. Morgan Stanley & Co., Inc.</u>, Civil Action No. 17-13080 (D.N.J., Oct. 15, 2018)(compelling arbitration under the CARE Arbitration Agreement where there was no dispute that the email was sent to plaintiff, even though plaintiff could not recall reviewing the email).

<u>POINT I</u>

**PLAINTIFF'S ARGUMENT THAT HE "NEVER SAW" THE ARBITRATION EMAIL IS IRRELEVANT AS A MATTER OF LAW**

Plaintiff's opposition demonstrates a blatant disregard of established New York law. Plaintiff argues that the only question before the Court is whether Plaintiff read the Arbitration Agreement that was sent to his work email. This argument is inconsistent with the entirety of New York case law on this issue. The relevant inquiry is whether Plaintiff *received* the Arbitration Agreement, which he does not and cannot deny. Pb., 13 ("*While the Arbitration E-mail may technically have been in Plaintiff's Inbox…*".). Plaintiff's incorrect contention ignores the plethora of case law in the Second Circuit that recognizes the presumption that a party who has received notice of an arbitration agreement by mail or email in accordance with regular office procedures, is bound by such agreement in accordance with its terms even if he or she denies seeing or reading the notice. *See* <u>Clearfield v. HCL America Inc.</u>, No. 17-CV-1933 (JMF), 2017 WL 2600116, *2 (S.D.N.Y. June 15, 2017) (citing <u>Manigault v. Macy's East, LLC</u>, 318 F. Appx. 6, 7 (2d Cir. 2009) (summary order)); <u>DuBois v. Macy's East Inc.</u>, 338 F. Appx. 32, 33 (2d Cir. 2009) (summary order); *see also* <u>Couch v. AT&T Serv's. Inc.</u>, No. 13-CV-2004 (DRH), 2014 WL 7424093, at *5 (E.D.N.Y. Dec. 31, 2014)(finding valid arbitration agreement existed despite plaintiff's argument that he never received email containing link for the arbitration agreement). Ignoring an email is insufficient to disclaim notice where it is undisputed that the email was received.

> New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption. **There must be—in addition to denial of receipt—some proof that the regular office**

> ***practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable***. *See* <u>Nassau Insurance Co. v. Murray</u>, 46 N.Y.2d 828, 829–30 (1978). Whether the sender's duty is to sound the drum-beat, send up the smoke signal, or mail the notice, ***proof that he performed suffices***, regardless of what the receiver heard, saw, or read. Under <u>Nassau</u>, the controlling inquiry is only whether [defendant] fulfilled its duty to send the notice, not whether the holders received it.

<u>Meckel v. Continental Resources Co.</u>, 758 F.2d 811, 817 (2d Cir. 1985) (emphasis added).

Plaintiff does not attempt to rebut this presumption because he does not dispute that he received the email. Plaintiff's only argument is he did not see the May 20, 2015 Arbitration Email when it was sent to him — not because he didn't receive it - but because he unilaterally decided which emails were worth reading.[1] Plaintiff's contention is insufficient as a matter of law to rebut the presumption of receipt, and receipt is all that was necessary to provide notice and form an arbitration agreement under controlling Second Circuit authority. <u>Manigault</u>, 318 F. App'x at 7; <u>Meckel</u>, 758 F.2d at 817; <u>Lockette</u>, supra, at *4; <u>Pelligrino</u>, supra, at *3.

Similarly, Plaintiff has not offered any proof that the "regular office practice was not followed or was carelessly executed." *See* <u>Couch</u>, <u>supra</u>, at *6-7. Plaintiff has not even attempted to rebut Morgan Stanley's argument that it took clear and concise steps to ensure delivery and notice of the May 20, 2015 Arbitration Email and Arbitration Agreement. Krenztman Decl.[2], ¶¶4-20. Plaintiff has not provided any grounds on which to depart from the case law in this Circuit that has consistently held that the presumption of receipt of an email applies to arbitration agreements and supports granting motions to compel arbitration.

---

[1] In Plaintiff's own words, he "started opening only recent, project-related emails that [he] thought might need immediate attention…I only opened what seemed from the subject line like it may be urgent, still relevant to work projects, or if a sender's name jumped out at me as someone I hadn't heard from in a long time. Based on the subject and/or sender, I can tell if an email relates to something urgent…" Pl. Decl., ¶¶30-31. It is undisputed that Plaintiff reviewed and responded to emails that he received both prior to and after May 20, 2015. It is also undisputed that Plaintiff was aware he was required to review emails from Human Resources. This Court has already determined that the subject line of the May 20, 2015 Arbitration Email "clearly indicated its content". <u>Lockette</u>, <u>supra</u>, at *10. On these facts, it is a logical deduction that Plaintiff saw the May 20, 2015 Arbitration Email from Human Resources and ignored it.
[2] Declaration of Jessica Krentzman, dated August 29, 2019.

Plaintiff's excuse for not reviewing the May 20, 2015 Arbitration Email is that he was on an "informal leave"[3] and "the only work-related activities he engaged in around that [May-June 2015] time were submitting time sheets and completing training modules when directed to do so by his supervisor". These excuses are not only irrelevant, but demonstrably false and refuted by both the documentary evidence and Plaintiff's own testimony. The record evidence demonstrates that in May and June 2015, Plaintiff reviewed and responded to work emails, initiated work emails, completed multiple required training courses, and participated in at least one work conference call. Heslin Cert.,[4] Exs. D-J; Pl. Tr.[5] at 106-109; 140:23-141:3.

Plaintiff also testified that although he was on "leave" beginning sometime in March 2015, he began reviewing emails and working again in mid-June 2015. At that time, he unilaterally decided to use his own discretion to determine which emails to review and respond to.  Pl. Tr. at 8:14-23; 61:15-63:11; Pl. Decl., ¶¶28-32. Plaintiff further testified that he knew that he was required to review emails from Human Resources. Pl. Tr. 43:2-9. Notably, Plaintiff reviewed and responded to emails that pre-dated the May 20, 2015 Arbitration Email and those that post-dated the May 20, 2015 Arbitration Email. Heslin Cert., Exs. D-J; Suppl. Heslin Cert., Ex. C. While Plaintiff contends that in June he had approximately 4,000 emails to review and that it would have taken "over 66 hours" to review them – he fails to indicate how many of the alleged 4,000 emails were from Human Resources. During the period of May 20, 2015 through June 19, 2015, Plaintiff received only **two** emails from Human Resources—one of which was the May 20, 2015 Arbitration Email. Krentzman Decl., Ex. B and Suppl. Heslin Cert., Ex. B. By

---

[3] Plaintiff repeatedly states that his supervisor never told him to apply for FMLA leave. This contention is not only irrelevant to the motion, but also false.  Immediately upon learning of Plaintiff's daughter's illness, Plaintiff's supervisor, Chuck Mayle-Rosauri, notified Human Resources who then contacted Plaintiff via email on February 19, 2015, and advised him of his right to apply for leave under the FMLA. Supplemental Certification of Kerrie R. Heslin, dated September 20, 2019, ("Suppl. Heslin Cert."), Ex. A.  Plaintiff received the email, discussed the email with his father in-law, and never responded to Human Resources.  Suppl. Heslin Cert., Ex. B; Plaintiff voluntarily chose not to take unpaid FMLA leave and instead chose to stay actively employed and continued to collect his annual salary of $195,000.00.  Pl. Tr. 66:14-17; 67-70.
[4] Certification of Kerrie R. Heslin, dated August 30, 2019.
[5] Plaintiff's Deposition Transcript, dated August 12, 2019, attached as Ex. C to Heslin Cert.

Plaintiff's own calculation, it would have taken him approximately two minutes to review the two emails from Human Resources; he chose not to and "did not even attempt to[.]" Pl. Decl., ¶28. Plaintiff provides no explanation as to why he did not review emails from Human Resources when he began working again in mid-June 2015 or when he physically "returned" to work in September 2015 – despite his admission that he was required to read such emails.

Plaintiff's explanation that in September 2015 "it was more like [he] was re-starting a job rather than returning from a break" (Pl. Decl., ¶37) or that he determined it was more important to get to work "[r]ather than wasting hours and hours of time on unproductive email review" (Pl. Decl., ¶38) again ignores and does not explain why he did not review emails he was required to read from Human Resources. Additionally, Plaintiff acknowledges that he "did not discuss this decision [not to review his emails] with [his] supervisors[.]" Pl. Decl., ¶39. Plaintiff's explanation is nonsensical and ignores his admitted obligation to review emails from Human Resources. "It is an established business practice and expectation for employees both to routinely check email and internal business sites for important updates concerning the business, their employment or changes in operations or procedures." Antollino, supra, at *7. The explanations offered by Plaintiff fail to rebut the presumption that the May 20, 2015 Arbitration Email was received by him in his Morgan Stanley email account and does not demonstrate that Morgan Stanley was unreasonable in its procedure. Rather, Plaintiff's explanation demonstrates that he was unreasonable.

Generally, employment includes the understanding that employees will act with diligence in following an employer's instructions and responding to requests, whether transmitted by email or another reasonable mode of communication. Plaintiff has submitted absolutely no evidence, policy, or prior course of dealings from which this Court can infer that Plaintiff was free to ignore Morgan Stanley's communications from Human Resources without repercussions. Especially, whereas here, Plaintiff has acknowledged that he was required to read all emails that he received from Human Resources. In sum, the fact that Plaintiff may have been on an "informal leave" at the time the May 20, 2015 Arbitration Email was sent is irrelevant. The law presumes that Plaintiff received the email sent to his work email address, that receipt provided

notice of the Arbitration Agreement and the fact that Plaintiff would be bound if he continued his employment without opting out, and it is undisputed that Plaintiff failed to opt-out of the Arbitration Agreement, and thereby assented to the Arbitration Agreement.

## POINT II

### PLAINTIFF'S ARGUMENT THAT THE ARBITRATION AGREEMENT IS UNENFORCEABLE IS CONTRARY TO NEW YORK LAW

At the time the May 20, 2015 Arbitration Email was delivered to Plaintiff, he had been employed by Morgan Stanley for 11 years. His employment included regular email communication with his supervisors and his direct reports, and justified Morgan Stanley's expectation of a reply, and its assumption that Plaintiff's silence indicated his acceptance of mandatory arbitration. Morgan Stanley emailed the revised Arbitration Agreement and explanation of changes to Plaintiff personally, provided him 30 days to review the new Arbitration Agreement, circulated an Opt-Out Form, conspicuously displayed the deadline to opt-out, posted a continual reminder of the new arbitration policy and opt-out date on the intranet, and repeatedly informed that it would construe silence as acceptance of the Arbitration Agreement. Krentzman Decl., ¶¶4-20. Each one of these actions bolstered Morgan Stanley's expectation of a response.

Plaintiff's argument that even if he had seen the email, it did not provide sufficient notice of the essential terms of the Arbitration Agreement has been rejected by this Court and others on multiple occasions. Specifically, in <u>Lockette v. Morgan Stanley</u>, the Court held:

> The email's subject line, "Expansion of CARE Arbitration Program," clearly indicated its content. And the content itself conspicuously notified employees that: (1) all covered claims by employees…would be subject to mandatory arbitration; (2) unless employees opted out of CARE, their continued employment would be considered assent to the program; and (3) they could opt out by submitting a form before the program's effective date. *The email also contained hyperlinks to the new arbitration agreement and CARE Guidebook. <u>This is sufficient notice of the defendants' offer and its terms.</u>*

Lockette, supra, at *10-11. *See also* Antollino, supra, at *7. Likewise, in Pelligrino v. Morgan Stanley, the Court held that "[t]hese facts, that Morgan Stanley sent the relevant email to Plaintiff, that the email provided a way to opt out of the expanded program, and that Plaintiff did not so opt out—compel the conclusion that Plaintiff is bound by the Arbitration Agreement and the CARE Guidebook's arbitration provisions in light of various principles of New York law." Pelligrino, supra, at *3.

Plaintiff glaringly ignores the controlling Second Circuit case law cited by Morgan Stanley (Db., 11-13). The state of the law in the Second Circuit under New York law is very clear with respect to this Arbitration Agreement and the means by which it was delivered to Morgan Stanley employees, and it has been held to be enforceable. Courts in this District have already determined that the subject line of the May 20, 2015 Arbitration Email was sufficiently worded to provide notice to employees.

Because he cannot escape the result required under New York law, Plaintiff relies exclusively on an opinion from a different Circuit, Campbell v. Gen Dynamics Gov't Sys. Corp., 407 F.3d 546, 556-57 (1st Cir. 2005). But Courts in this District have already considered this argument and rejected it. *See* Lockette, supra, at *12. In Campbell, the defendant did not typically use email to handle personnel matters and the email in question did not state directly that the relevant policy contained an arbitration agreement that was meant to effect a waiver of an employee's right to access a judicial forum. The Court in Lockette recognized that these facts are different from Morgan Stanley's use of emails as a means of communicating with its employees. In Lockette, the Hon. John G. Koeltl enforced the exact same Morgan Stanley Arbitration Agreement at issue here. Moreover, Plaintiff severely mischaracterizes Krentzman's Declaration, wherein she states, "Morgan Stanley's use of both email communications and postings on me@MS to communicate information about the expansion of the CARE Arbitration Program was consistent with how it communicates important and time-sensitive information about other Human Resources policies and policy changes." Krentzman Decl., ¶16; Suppl. Heslin Cert., Ex. E, No. 5 (explaining that the CARE Arbitration Notice was delivered to employees' individualized Morgan Stanley email accounts and posted on Morgan Stanley's

9

intranet, "consistent with" how Morgan Stanley generally communicates important and time sensitive information). Plaintiff has offered no evidence to rebut these undisputed facts.

To the extent Plaintiff argues that his "silence" could not manifest his intent to be bound, he again disregards the controlling New York case law. As an initial matter, Plaintiff relies on New York cases requiring that arbitration agreements be established by "clear, explicit, and unequivocal" agreement. Pb, pp.8-12. Controlling Second Circuit authority, however, has rejected such a standard as preempted by the Federal Arbitration Act ("FAA"). *See* Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir. 1993) ("New York law requires that nonarbitration agreements be proven only by a mere preponderance of the evidence," and to require arbitration agreements to be proven with the "express, unequivocal agreement" standard was barred by the FAA); Weiss v. Macy's Retail Holdings Inc., 265 F. Supp. 3d 358, 363 (S.D.N.Y. 2017) (citation omitted); *see also* Couch, supra, at *3. Here, the May 20, 2015 Arbitration Email to Plaintiff clearly notified him that "[b]y continuing your employment with Morgan Stanley, you accept and agree to, and will be covered and bound by the terms of the Arbitration Agreement and the arbitration provisions of the CARE Guidebook, unless you elect to opt out of the CARE Arbitration Program[.]"Krentzman Decl., Ex. B. The reminder notice posted on Morgan Stanley's intranet contained nearly identical language.  Krentzman Decl., ¶15.

Finally, Plaintiff's insistence that Morgan Stanley's attempt to enforce the Arbitration Agreement that was sent while he was on an "informal leave" is somehow a "gotcha" is not supported by the facts.[6] Both the May 20, 2015 Arbitration Email and the Opt-Out Form

---

[6] Similarly, Plaintiff's argument that being bound by the Arbitration Agreement is a punishment unpersuasive and inaccurate.  As the Supreme Court of the United States observed nearly two decades ago, "there are real benefits to the enforcement of arbitration provisions. "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122-23 (2001).  Moreover, arbitration is simpler, cheaper, and faster than litigation in court.  As a recent study released by the Chamber's Institute for Legal Reform found arbitration cases in which the employee brought the claim and prevailed took, on average, 569 days to complete, while cases in court required an average of 665 days. Moreover, employees did better in arbitration than in

provided that in the event an employee was on a leave during the relevant opt-out window, they had 30 days upon return from leave to opt-out of the Arbitration Agreement. It is again Plaintiff's own conduct that caused him allegedly to "never see" the May 20, 2015 Arbitration Email in either June 2015 or September 2015, because he did not "even try" to read his emails upon his return. It is absolutely Plaintiff's "own fault" that he did not see the Arbitration Agreement, which was irrefutably delivered to his Morgan Stanley email account. "These facts—particularly, that Morgan Stanley sent the relevant email to Plaintiff, that the email provided a way to opt out of the expanded program, and that Plaintiff did not so opt out— 'compel the conclusion' that Plaintiff is bound by the Arbitration Agreement and the CARE Guidebook's arbitration provisions in light of various principles of New York law." Pelligrino, supra, at *3.

A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of the claim in order to precipitate the trial contemplated by 9 U.S.C. §4. Here, Plaintiff concedes that he received the May 20, 2015 Arbitration Email sent to his work email at a time when he was actively employed because he chose not to take a formal leave of absence. Plaintiff did not opt out of the Arbitration Agreement and continues to work for Morgan Stanley to this day.  These facts are sufficient to manifest assent and form a valid contract.

## CONCLUSION

For the reasons set forth above and in Morgan Stanley's initial motion papers, Morgan Stanley respectfully requests that this Court grant its Renewed Motion to Compel Arbitration, compel the parties to arbitration pursuant to the Arbitration Agreement, and stay this case pending arbitration.

---

court—in cases decided by an arbitrator or court (rather than settled), employees who filed claims won three times as often in arbitration—32% compared to 11%—and recovered an average award of $520,630 in arbitration compared to $269,885 in court. *See* NDP Analytics, *Fairer, Faster, Better: An Empirical Assessment of Employment Arbitration* 5-10 (May 2019), *available   at*   https://www.instituteforlegalreform.com/uploads/sites/1/Empirical-Assessment-Employment-Arbitration.pdf.

Respectfully submitted,

NUKK-FREEMAN & CERRA, P.C.
*Attorneys for Defendant*
*Morgan Stanley Smith Barney LLC*

By: */s/Kerrie R. Heslin*
    Kerrie R. Heslin, Esq.
    Pro Hac Vice Admission Granted March 7, 2019

Dated:  September 20, 2019